1  CENTER FOR DISABILITY ACCESS
   Chris Carson, Esq., SBN 280048
2  Ray Ballister, Jr., Esq., SBN 111282
   Phyl Grace, Esq., SBN 171771
3  Dennis Price, Esq., SBN 279082
   Mail: PO Box 262490
4  San Diego, CA 92196-2490
   Delivery: 9845 Erma Road, Suite 300
5  San Diego, CA 92131
   (858) 375-7385; (888) 422-5191 fax
6  phylg@potterhandy.com

7  Attorneys for Plaintiff

8

9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA

11

12  | **Luis Villegas**, | **Case No**. |
    | --- | --- |
13  | Plaintiff, | **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |
    | v. | |
14  | **La Puente Company LLC**, a California Limited Liability Company; | |
15  | **Taco Del Rio, Inc**., a California Corporation; and Does 1-10, | |
16  | Defendants. | |

19      Plaintiff Luis Villegas complains of Defendants La Puente Company
20  LLC, a California Limited Liability Company; Taco Del Rio, Inc., a California
21  Corporation; and Does 1-10 ("Defendants") and alleges as follows:
22

23      **PARTIES:**
24  1.  Plaintiff is a California resident with physical disabilities. He is a
25  paraplegic who cannot walk and who uses a wheelchair for mobility.
26  2.  Defendant La Puente Company LLC owned the real property located at
27  or about 445 S. Azusa Avenue, La Puente, California, in October 2017.
28  3.  Defendant La Puente Company LLC owns the real property located at

Complaint

1    or about 445 S. Azusa Avenue, La Puente, California, currently.

2        4.   Defendant Taco Del Rio, Inc. owned the Taco Del Rio located at or

3    about 445 S. Azusa Avenue, La Puente, California, in October 2017.

4        5.   Defendant Taco Del Rio, Inc. owns the Taco Del Rio restaurant

5    ("Restaurant") located at or about 445 S. Azusa Avenue, La Puente, California,

6    currently.

7        6.   Plaintiff does not know the true names of Defendants, their business

8    capacities, their ownership connection to the property and business, or their

9    relative responsibilities in causing the access violations herein complained of,

10   and alleges a joint venture and common enterprise by all such Defendants.

11   Plaintiff is informed and believes that each of the Defendants herein,

12   including Does 1 through 10, inclusive, is responsible in some capacity for the

13   events herein alleged, or is a necessary party for obtaining appropriate relief.

14   Plaintiff will seek leave to amend when the true names, capacities,

15   connections, and responsibilities of the Defendants and Does 1 through 10,

16   inclusive, are ascertained.

17

18   **JURISDICTION & VENUE:**

19       7.   This Court has subject matter jurisdiction over this action pursuant to

20   28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with

21   Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

22       8.   Pursuant to supplemental jurisdiction, an attendant and related cause

23   of action, arising from the same nucleus of operative facts and arising out of

24   the same transactions, is also brought under California's Unruh Civil Rights

25   Act, which act expressly incorporates the Americans with Disabilities Act.

26       9.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is

27   founded on the fact that the real property which is the subject of this action is

28   located in this district and that Plaintiff's cause of action arose in this district.

Complaint

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Restaurant in October 2017 to eat.

11. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

13. Unfortunately, even though there were parking spaces marked and reserved for persons with disabilities in the parking lot where the Restaurant is located during Plaintiff's visit, all the parking stalls and access aisles reserved for persons with disabilities were not level with each other.

14. In fact, each of the parking spaces marked and reserved for persons with disabilities had slopes greater than 2.1%.

15. Currently, all the parking stalls and access aisles are not level with each other and there are inaccessible slopes in both the access aisles and parking stalls.

16. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

17. Unfortunately, the transaction counter where customers order and pick up food, is inaccessible to wheelchair users.

18. The transaction counter where customers order and pick up their orders is located 42 inches above the finish floor and not accessible to plaintiff.

19. Restrooms are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

20. The restroom doorway clear passage width was less than 32 inches and inaccessible to wheelchair users. In fact, the restroom doorway is 25 inches wide.

21. The toilet stall was improperly configured and too small for wheelchair users, measuring 62 inches in width and 42 inches in depth.

3

Complaint

22. The restroom sink was mounted such that the counter or rim was higher than 34 inches above the finish floor. In fact, the restroom sink is 35 inches above the finish floor.

23. The restroom sink had a pedestal style sink that did not provide any knee clearance for wheelchair users.

24. Instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there were no grab bars.

25. Currently, the restroom doorway clear passage width is less than 32 inches and inaccessible to wheelchair users.

26. Currently, the toilet stall is improperly configured and too small for wheelchair users, measuring 62 inches in width and 42 inches in depth.

27. Currently, the restroom sink is mounted such that the counter or rim is higher than 34 inches above the finish floor.

28. Currently, the restroom sink has a pedestal style sink that does not provide any knee clearance for wheelchair users.

29. Currently, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there are no grab bars.

30. Plaintiff personally encountered these barriers.

31. These inaccessible conditions denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

32. Plaintiff plans to return and patronize the Restaurant but will be deterred from visiting until the defendants remove the barriers.

33. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

34. The barriers identified above are easily removed without much

Complaint

1   difficulty or expense. They are the types of barriers identified by the

2   Department of Justice as presumably readily achievable to remove and, in fact,

3   these barriers are readily achievable to remove. Moreover, there are numerous

4   alternative accommodations that could be made to provide a greater level of

5   access if complete removal were not achievable.

6        35. For example, there are numerous paint/stripe companies that will come

7   and stripe a level parking stall and access aisle and install proper signage on

8   rapid notice, with very modest expense, sometimes as low as $300 in full

9   compliance with federal and state access standards.

10       36. A common barrier removal project is modifying service counters to

11  make a portion of the counter accessible. This is a simple construction task,

12  well within the capabilities of any general contractor. The task can be

13  completed easily and for a modest price.

14       37. Plaintiff is and has been deterred from returning and patronizing the

15  Restaurant because of his knowledge of the barriers that exist. Plaintiff will,

16  nonetheless, return to assess ongoing compliance with the ADA and will

17  return to patronize the Restaurant as a customer once the barriers are

18  removed.

19       38. Given the obvious and blatant nature of the barriers and violations

20  alleged herein, the plaintiff alleges, on information and belief, that there are

21  other violations and barriers on the site that relate to his disability. Plaintiff will

22  amend the complaint, to provide proper notice regarding the scope of this

23  lawsuit, once he conducts a site inspection. However, please be on notice that

24  the plaintiff seeks to have all barriers related to his disability remedied. See

25  *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff

26  encounters one barrier at a site, he can sue to have all barriers that relate to his

27  disability removed regardless of whether he personally encountered them).

28

5

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all defendants (42 U.S.C. section 12101, et seq.)

39. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

40. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

   a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

   c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals

Complaint

1       with disabilities. 42 U.S.C. § 12183(a)(2).

2    41. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle and parking space is not level. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

42. Here the failure to provide level parking is a violation of the law.

43. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

44. Here, no such accessible transaction counter has been provided in violation of the ADA.

45. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

46. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

47. Where a toilet stall is provided in a restroom in existing facilities, the size

Complaint

and arrangement of the standard toilet stall shall comply with either Fig. 30(a) (standard stall) or Figure 30(b) (alternate stall). 1991 Standards § 4.17.3. A standard stall must be at least 60 inches wide by 56 inches deep (if the toilet is wall mounted) or 59 inches deep if the toilet is floor mounted. 1991 Standards § Figure 30(a). An alternate stall must meet one of two configurations: either (1) be exactly 36 inches by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide front transfer grab bars or (2) be at least 48 inches wide by at least by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide side transfer grab bars. 1991 Standards § Figure 30(b).

48. Here, the toilet stall does not meet any option under the ADA and is in violation of the law.

49. Sinks must be mounted so that the counter or rim is no higher than 34 inches above the finish floor. 1991 Standards § 4.24.2; 2010 Standards § 606.3.

50. Here, the sink was mounted higher than the maximum permitted and is a violation of the ADA.

51. Sinks must provide knee clearance of at least 29 inches in height. 1991 Standards § 4.19.2 and Figure 31; 2010 Standards § 606.2 and 306.

52. Here, no such knee clearance was provided and this is a violation of the ADA.

53. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

54. Here, the failure to provide compliant grab bars is a violation.

55. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

Complaint

56. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

57. Given its location and options, plaintiff will continue to desire to patronize the Restaurant but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

58. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

59. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

60. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

61. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

9

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act and/or the California Disabled Persons Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.


Dated: May 7, 2018                    CENTER FOR DISABILITY ACCESS



By: _____

                    Chris Carson, Esq.
                    Attorney for Plaintiff

Complaint